# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

CYBERCODERS, INC.,         §
§
           *Plaintiff,*         §
§
v.                            §       Civil Action No. 4:25-cv-1079
§       Judge Mazzant
JENNIFER SMITH and JAYCO    §
TALENT, LLC,             §
§
           *Defendants.*       §

## <u>MEMORANDUM OPINION AND ORDER</u>

Pending before the Court is Plaintiff's Application for Temporary Restraining Order and Preliminary Injunction (Dkt. #2), Plaintiff's Motion for Expedited Discovery (Dkt. #3), and Plaintiff's Request for Issuance of Temporary Restraining Order without Hearing, or in the Alternative, Request for Hearing (Dkt. #12) (the "Motions"). Having considered the Motions and the relevant pleadings, the Court finds that the Motions should be **GRANTED**.

## BACKGROUND

Plaintiff Cybercoders, Inc. ("Plaintiff" or the "Company") is a national recruiting firm headquartered in Irvine, California (Dkt. #1 at ¶ 9). Plaintiff serves its customers by finding top talent for recruiting, staffing, assignment or placement of temporary, temporary-to-hire, and permanent or direct-hire employees (Dkt. #1 at ¶ 22). Plaintiff's customers represent various industries across the country (Dkt. #1 at ¶ 24).

On January 9, 2023, Defendant Jennifer Smith ("Smith") joined Plaintiff as a Recruiter, and then later, promoted to Executive Recruiter, Sr. Executive Recruiter, and finally, Lead Recruiter (Dkt. #1 at ¶¶ 27–28). As a Lead Recruiter, Smith was primarily responsible for finding customers and soliciting them to engage Plaintiff's recruiting services and filling roles for those customers

(Dkt. #1 at ¶ 29). By virtue of her position, Smith had access to confidential information about Plaintiff's customers, potential customers, and staffing needs (Dkt. #1 at ¶ 34). Additionally, Smith also had access to confidential information regarding candidates' skills, qualifications, work history, preferences, location, benefits, and compensation requirements (Dkt. #1 at ¶ 34). Plaintiff refers to this proprietary intellectual property as its Confidential Information,[1] trade secrets, or Cyrus (Dkt. #1 at ¶¶ 34–35). On December 18, 2022, upon her hiring, Smith signed a Confidentiality, Non-Solicitation, and Non-Competition Agreement with Plaintiff (the "Agreement") (Dkt. #1 at ¶ 51).[2]

---

[1] Plaintiff defines "Confidential Information" as any and all nonpublic information whether written or verbal, or contained on computer hardware or software, electronic mail, thumb drive, disk, or other media, relating to or arising from the Company's business, including, without limitation, (i) the Company's business plans, strategic plans, forecasts, budgets, sales, projections and costs; (ii) all information concerning the Company's employees, including but not limited to payroll records, employee lists, prospective employee lists, salaries, wage information, other compensation, agreements, commission schedule, and benefits, unless such information is Employee's own; (iii) all information concerning Company's temporary employees, candidates, consultants, and contractors, including lists, identities, resumes, preferences, transaction histories, rates and related information, and other characteristics; (iv) the details of Company's relationship with its customers, customer representatives, and prospective customers, including their identity, the identities of their employees, contractors and consultants, special needs, job orders, preferences, transaction histories, contacts, other characteristics, agreements, prices, and the nature of their fees and charges; (v) marketing activities, plans, promotions, operations, research and development, advertising sources, the techniques used in, approaches to, or results of any market research, and other marketing data; (vi) business operations, internal structures and financial affairs; (vii) systems and procedures, and methods of production; (viii) pricing structure, pricing information (such as price lists, quotation guides, previous or outstanding quotations, or billing information); (ix) proposed or pending projects, services and products; (x) contracts with other parties; (xi) Company customer history and technical information; (xii) information contained in any Company database or on PeopleSoft, Sharepoint, and any other system that may replace any of them over time; (xiii) computer techniques and processing capabilities; (xiv) proprietary computer programs; (xv) business plans and projections, including new product, facility or expansion plans; (xvi) estimating programs and methodology; (xvii) training materials; (xviii) Trade Secrets; (xix) financial information and/or documents and nonpublic forms, contracts, policies, procedures and other printed, written or electronic material generated or used in connection with Company's business; (xx) the Company's trade secrets; and (xxi) any and all information that the Company is obligated to maintain as confidential or that the Company may receive or has received from others (including customers or potential customers) with any understanding, express or implied, that it will not be disclosed (Dkt. #1-1 at p. 2).

[2] Section 2.2(a) of the Agreement prohibits Smith from competing with Plaintiff:

> Employee will not directly or through others, (i) during Employee's employment with the company, to the extent permitted by applicable law, an (ii) for a period of twelve (12) months following the Termination Date: (i) perform a Competing Position for a Competing Business within the Restricted Territory; (ii) own, maintain, operate or have any ownership interest in a Competing Business; or (iii) perform any other services for a Competing Business that are likely or probable to result in the disclosure of Confidential Information[.]

Smith was required to enter the Agreement to have access to the trade secrets contained in Cyrus (Dkt. #1 at ¶ 51).

On July 25, 2025, Smith resigned from her position as Lead Recruiter with Plaintiff (Dkt. #1 at ¶ 97). Plaintiff contends that before and after her resignation, Smith violated her Agreement by competing with Plaintiff, soliciting and seeking to do business with Plaintiff's customers, potential customers, and candidates, and exfiltrating and using Plaintiff's Confidential Information and trade secrets for the benefit of Defendant Jayco Talent, LLC ("Jayco" and together with Smith, "Defendants") (Dkt. #1 at ¶¶ 4, 7). Specifically, Plaintiff alleges, shortly before her resignation, Smith misappropriated Plaintiff's trade secrets, by doing the following in violation of Plaintiff's security constraints: (a) transferring over 900 files to a USB device; (b) emailing customer and candidate information to her personal Gmail account; (c) sharing OneNote files with customer and candidate information to her Gmail account; and (d) uploading files to her Gmail account (Dkt. #1 at ¶¶ 4, 80).

Plaintiff also alleges that within a week of her resignation, Smith launched a competing recruiting company, Jayco, in violation of the Agreement (Dkt. #1 at ¶ 99). Jayco specializes in commercial and industrial construction recruiting across the United States (Dkt. #1 at ¶ 100). Plaintiff further alleges that prior to her departure from her position with Plaintiff, Smith informed Plaintiff's customers that she would be leaving to start Jayco and solicited those customers to do business with Jayco (Dkt. #1 at ¶ 5). Moreover, Plaintiff alleges that Smith, through Jayco, posted current job openings for Plaintiff's customers she worked with while employed by Plaintiff (Dkt.

---

Dkt. #1-1 at ¶ 2.2.

#1 at ¶ 6). Lastly, Plaintiff attributes the loss of one specific customer to date directly to Smith's conduct (Dkt. #1 at ¶¶ 93–96).

On July 30, 2025, once Plaintiff learned Smith had formed Jayco and had taken the proprietary information, Plaintiff sent Smith a cease-and-desist letter (Dkt. #1 at ¶ 114; Dkt. #11 at ¶ 5). Between late July and early September of 2025, Plaintiff and Smith exchanged correspondence discussing the issues raised in the instant Motions (Dkt. #1 at ¶¶ 112–17; Dkt. #11 at ¶¶ 5–8). However, the parties were unable to resolve the matter before initiating this litigation (Dkt. #1 at ¶ 118). As a result, Plaintiff now seeks injunctive relief to enforce its contractual rights against Defendants, to prevent further alleged misuse of its Confidential Information, and to protect its competitive market positioning (Dkt. #1 at ¶ 7).

On October 2, 2025, Plaintiff filed this action alleging the following causes of action: (1) breach of contract against Smith (Dkt. #1 at ¶¶ 119–29); (2) violations of the Texas Uniform Trade Secrets Act against Defendants ("TUTSA") (Dkt. #1 at ¶¶ 130–45); (3) violations of the Defend Trade Secrets Act against Defendants ("DTSA") (Dkt. #1 at ¶¶ 146–63); (4) breaches of duty of loyalty and fiduciary duty against Smith (Dkt. #1 at ¶¶ 164–77); (5) aiding and abetting breach of duty of loyalty and fiduciary duty against Jayco (Dkt. #1 at ¶¶ 178–88); and (6) tortious interference with contract against Jayco (Dkt. #1 at ¶¶ 189–201). On the same day, Plaintiff also filed its Application for Temporary Restraining Order and Preliminary Injunction (Dkt. #2) and its Motion for Expedited Discovery (Dkt. #3). On October 17, 2025, Defendants filed their Brief in Opposition to the Temporary Restraining Order and Preliminary Injunction (Dkt. #11). On October 17, 2025, Plaintiff filed its Request for Issuance of Temporary Restraining Order without Hearing, or in the

alternative, Request for Hearing (Dkt. #12), which asks for the same relief included in Plaintiff's previous motions.[3] All Motions are now ripe.

## LEGAL STANDARD

Under Rule 65 of the Federal Rules of Civil Procedure, "[e]very order granting an injunction and every restraining order must: (a) state the reasons why it issued; (b) state its terms specifically; and describe in reasonable detail . . . the act or acts restrained or required." FED. R. CIV. P. 65(d). A plaintiff seeking a temporary restraining order must show: (1) a substantial likelihood of success on the merits; (2) a substantial threat that plaintiff will suffer irreparable harm if the injunction is not granted; (3) the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) the injunction will not disserve the public interest. *Nichols v. Alcatel USA, Inc.*, 532 F.3d 364, 372 (5th Cir. 2008).

## ANALYSIS

The Court will begin by disposing of issues Defendants do not contest. In the first paragraph of their Response, Defendants note that they "do not oppose Plaintiff's proposed restraining order's provisions regarding the non-solicitation or confidentiality restrictions, provided that Plaintiff supplies Defendants with a list of the entities or persons not to be solicited." (Dkt. #11 at ¶ 1).[4] Defendants assure the Court that they will continue to deny they used or disclosed Plaintiff's

---

[3]  Under Local Rule 7(l), titled Emergency Motions, "Counsel filing an emergency motion should ensure that: (1) the caption of the motion begins with the word 'emergency;' (2) the motion is electronically filed using the CM/ECF drop down menu option entitled 'emergency;' (3) the motion clearly states the alleged imminent, irreparable harm and the circumstances making proceeding under LOCAL RULE CV-7(e) inadequate; and (4) the chambers of the presiding judge is notified, either by telephone, e-mail, or fax, that an emergency motion has been filed." E.D. TEX. CIV. R. 7(l). The Court prioritized the Motions despite not being considered Emergency Motions.

[4]  Because Plaintiff's proposed Temporary Restraining Order defines a "Material Contact" and the "Look Back Period," the Court will not require Plaintiff to supply Defendants with a comprehensive list of all customers, potential customers, employees, or contractors that Defendants should not solicit (Dkt. #2-1 at p. 4).

Confidential Information or solicited its clients or candidates and will prove so throughout this litigation; however, Defendants' Response solely focuses on opposing the enforcement of Smith's nationwide non-competition restraint (Dkt. #11 at ¶¶ 1 n.1, 2). Defendants ultimately ask the Court to partially deny Plaintiff's Application for the Temporary Restraining Order, requesting only that the Court not issue a non-competition restriction against Defendants (Dkt. #11 at ¶ 3).

Based on Defendant's consent to partially comply with Plaintiff's proposed restraining order, Plaintiff's Motions present only two remaining issues for the Court to address: (1) whether Plaintiff is entitled to injunctive relief based on the non-compete provision of the Agreement; and (2) whether Plaintiff is entitled to expedited discovery (Dkt. #2; Dkt. #3; Dkt. #12). The Court analyzes each issue in turn.

## I.    The Non-Competition Agreement

Plaintiff asks the Court to temporarily restrain Smith from the following: (i) performing a Competing Position[5] for a Competing Business[6], including Jayco, within the Restricted Territory[7]; (ii) own, maintain, operate or have any ownership interest in a Competing Business, including Jayco; or (iii) perform any other services for a Competing Business, including Jayco, that are likely or probable to result in the disclosure of confidential information, as defined by Plaintiff (Dkt. #2-1 at p. 2). Defendants oppose the enforcement of a nationwide non-competition restraint arguing

---

[5]  Plaintiff defines "Competing Position" as a position held by Smith with a Competing Business (defined below) that involves duties that are the same as or substantially similar to the duties Smith performed for the Plaintiff during the Look Back Period—the last two (2) years of Smith's employment with Plaintiff (Dkt. #2-1 at p. 3).

[6]  Plaintiff defines "Competing Business" as any person, entity, business, or subdivision of a business that provides products or services that are the same as or substantially similar to, and competitive with, the Company Business, including Jayco, or which is actively planning to engage in the services Plaintiff provides. (Dkt. #2-1 at p. 3)

[7]  Plaintiff defines Restricted Territory as all fifty (50) states (Dkt. #2-1 at p. 4).

Plaintiff has failed to establish the requirements to obtain a temporary restraining order (Dkt. #11 at ¶ 2). The Court considers the applicable legal standard below. *Nichols*, 532 F.3d at 372.

### A. Substantial Likelihood of Success on the Merits

Plaintiff asserts Smith breached both her employment and post-employment contractual obligations and now seeks to enforce the Agreement's non-compete provision (Dkt. #1 at ¶¶ 119–29). Under Texas law, the essential elements of a breach of contract claim are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Williams v. Wells Fargo Bank, N.A.*, 884 F.3d 239, 244 (5th Cir. 2018) (citing *Valero Mktg. & Supply Co. v. Kalama Int'l*, 51 S.W.3d 345, 351 (Tex. App.—Houston [1st Dist.] 2001, no pet.)). Texas Business and Commerce Code § 15.50 governs the enforceability of non-compete covenants and provides:

> [A] covenant not to compete is enforceable if it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made to the extent that it contains limitations as to time, geographical area, and scope of activity to be restrained that are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee.

TEX. BUS. & COM. CODE § 15.50.

Defendants argue (1) Plaintiff's own contract shows that a nationwide non-compete is not necessary to protect its goodwill and Confidential Information; and (2) given the size of the construction industry and Smith's low-level role at the Company, Plaintiff has no legitimate business reason for a nationwide non-compete restraint against her (Dkt. #11 at pp. 6–10). Because these two arguments only dispute the reasonableness of the non-competition provision to which Smith agreed, the Court will assume the non-compete is ancillary to or part of an otherwise enforceable agreement.

Under Texas law, "[a]n agreement not to compete is in restraint of trade and therefore unenforceable on grounds of public policy unless it is reasonable." *DeSantis v. Wackenhut Corp.*, 793 S.W.2d 670, 681 (Tex. 1990) (citations omitted). Whether a covenant not to compete is reasonable presents a question of law for the Court to decide. *See Vais Arms, Inc. v. Vais*, 383 F.3d 287, 295 (5th Cir. 2004). The Texas Business and Commerce Code § 15.51 provides:

> If the covenant is found to be ancillary to or part of an otherwise enforceable agreement but contains limitations as to time, geographical area, or scope of activity to be restrained that are not reasonable and impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee, the court shall reform the covenant to the extent necessary to cause the limitations contained in the covenant as to time, geographical area, and scope of activity to be restrained to be reasonable and to impose a restraint that is not greater than necessary to protect the goodwill or other business interest of the promisee and enforce the covenant as reformed[.]

Tex. Bus. & Com. Code § 15.51.

In sum, the restrictions in a non-compete covenant—geographic restrictions, duration, and scope—must all be reasonable. With these guiding principles, the Court considers the language of the non-compete provision in the Agreement, by which Smith contracted that during her employment with Plaintiff and for a period of one year following the termination of her employment, she would not:

> [D]irectly or through others . . . (i) perform a Competing Position for a Competing Business within the Restricted Territory; (ii) own, maintain, operate or have any ownership interest in a Competing Business; or (iii) perform any other services for a Competing Business that are likely or probable to result in the disclosure of Confidential Information.

(Dkt. #1-1 at ¶ 2.2).

The Agreement defines the "Restricted Territory" as the geographic territories assigned to Smith by Plaintiff and those states and counties in the United States about which Smith learned Confidential Information during the last two years of her employment with Plaintiff (Dkt. #1-1 at ¶

8

1.1). Plaintiff asserts that in Smith's case, the Restricted Territory includes all fifty (50) states (Dkt. #1 at ¶ 206). Defendants contest the reasonableness of the geographic area encompassed by this Restricted Territory (Dkt. #11 at ¶¶ 18–31).

"Texas courts generally enforce covenants that are restricted to the geographic territory within which the bound employee worked during his employment." *Merritt Hawkins & Associates, LLC v. Gresham (Hawkins II)*, 79 F. Supp. 3d 625, 634 (N.D. Tex. 2015) (citing *Butler v. Arrow Mirror & Glass, Inc.*, 51 S.W.3d 787, 793 (Tex. App.—Houston [1st Dist.] 2001, no pet.)); *Evan's World Travel Inc. v. Adams*, 978 S.W.2d 225, 232–33 (Tex. App.—Texarkana 1998, no writ). Indeed, "[c]ovenants with wide geographic areas have been upheld frequently in Texas courts, especially when the area covered constitutes the employee's actual sales or work territory." *M–I LLC v. Stelly,* 733 F. Supp. 2d 759, 798 (S.D. Tex. 2010) (citing *Vais Arms, Inc. v. Vais,* 383 F.3d 287, 295 (5th Cir. 2004)).

Here, Smith agreed to a nationwide non-compete restraint (Dkt. #1-1 at ¶ 2.2). As a Lead Recruiter, Smith was primarily responsible for finding customers around the country and soliciting them to engage Plaintiff's recruiting services and filling roles for them (Dkt. #1 at ¶¶ 29, 47). Although she worked remotely from Celina, Texas, Smith's assigned geographic territory was the entirety of the United States (Dkt. #1 at ¶¶ 3, 34). Moreover, by virtue of her position, Smith had access to Cyrus and all the proprietary information regarding Plaintiff's national customers, potential customers, and their staffing needs, and she was given access to Plaintiff's Confidential Information about its nationwide candidates' skills, qualifications, work history, preferences, location, benefits, and compensation requirements (Dkt. #1 at ¶¶ 34–35). Thus, the Court finds

the geographic scope of the Restricted Territory in the non-compete agreement was reasonable, and this broad geographic area does not render the non-compete provision unenforceable.

Defendants also argue a nationwide restraint on competition is not necessary to protect Plaintiff's goodwill and Confidential Information, which is evidenced by the fact that Plaintiff has implemented and enforced non-compete agreements with a narrower geographic area for employees that rank higher than Smith (Dkt. #11 at ¶ 18–24). Even if the Restricted Territory was narrowed to encompass only a fifty (50) mile radius around any office of Plaintiff, including Smith's office at her personal residence, she would still be in breach of the Agreement by her formation and operation of Jayco.

At this preliminary stage, Plaintiff has shown Smith's non-compete is enforceable, and that Smith formed Jayco, a competitor of Plaintiff, thereby breaching the non-compete provision of the Agreement and injuring Plaintiff. Accordingly, Plaintiff has established a substantial likelihood of success on the merits with respect to its breach of contract claim.

### B.  Irreparable Harm

For the Court to grant a temporary restraining order, Plaintiff must also demonstrate it is "likely to suffer irreparable harm in the absence of preliminary relief." *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). "In Texas, injury resulting from the breach of non-compete covenants is the epitome of irreparable injury." *A & A Global Indus., Inc. v. Wolfe*, CIV.A. 3:01CV1515–D, 2001 WL 1388020, at *5 (N.D. Tex. Nov. 6, 2001) (quoting *Am. Express Fin. Advisors, Inc. v. Scott*, 955 F. Supp. 688, 693 (N.D. Tex. 1996)); *see also Traders Int'l, Ltd. v. Scheuermann*, Civ.A. No. H–06–1632, 2006 WL 2521336, at *9 (S.D. Tex. Aug. 30, 2006) (finding the "substantial possibility" that a defendant's solicitation of his former employer's customers

would cause the former employer to lose the customers' business satisfied the requirement of irreparable injury).

Plaintiff argues that the harm is imminent, as Smith is prematurely and unfairly competing with Plaintiff and her actions are ongoing (Dkt. #2 at p. 13). Without denying Smith breached the non-compete provisions of the Agreement, Defendants argue that Plaintiff's two-month delay in seeking this restraining order and Plaintiff's attempt to settle the dispute monetarily show that any harm Plaintiff may have suffered is not immediate or irreparable (Dkt. #11 at ¶¶ 2, 13, 16). The Court agrees with Plaintiff.

Here, the Court finds that Plaintiff is likely to suffer irreparable harm absent injunctive relief. Smith presently benefits from breaching the non-competition provision of the Agreement by forming Jayco while she was still employed by Plaintiff and launching the competing company within one week of her resignation from Plaintiff (Dkt. #1 at ¶ 91). Plaintiff has been harmed because a competitor was formed and able to compete with it much sooner than the non-compete allowed and further harmed by Smith's misappropriation of Plaintiff's trade secrets necessary, or at a minimum helpful, in the formation and launch of Jayco, the Competing Business.

As highlighted by Defendants, Plaintiff sought to resolve these issues between the parties directly with Defendants before initiating this lawsuit (Dkt. #1 at ¶¶ 112–17; Dkt. #11 at ¶¶ 5–8). Specifically, Plaintiff sent Smith a cease-and-desist letter within five (5) days of her resignation, in which it raised the same issues in the Motions (Dkt. #11 at ¶ 5). The Court will not punish Plaintiff for trying to resolve the matter between the parties without court intervention for the two months before initiating this lawsuit by now saying the delay discredits the irreparable harm it alleges (Dkt.

#2 at pp. 12–14). Similarly, the Court will not find there is no irreparable harm because Plaintiff attempted to settle the dispute between the parties prior to initiating this litigation.

Although, Defendants have agreed to stop soliciting Plaintiff's former customers in violation of the Agreement and misappropriating Plaintiff's Confidential Information and trade secrets, the harm occurred and will continue to occur by allowing Jayco to continue in the same industry the parties specifically contracted to prohibit. Further, irreparable harm is ongoing as Jayco would continue to target customers in the construction industry and offer the same services Smith was responsible for while employed by Plaintiff, in direct violation of the Agreement. This alone is sufficient to establish irreparable injury (Dkt. #1 at ¶¶ 29, 99–100). Accordingly, the Court finds that Plaintiff has made a sufficient showing of irreparable harm.

### C. Balance of Harms

When deciding whether to grant an injunction, "courts must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Winter*, 555 U.S. at 24 (citation omitted). In balancing the equities, courts consider several factors, including: (1) the size of competing companies and the portions of revenues each party derives from their respective software;[8] (2) whether the injunction will effectively destroy a party's business;[9] and (3) whether denial will cause a loss of current market share or simply reduce prospects for expansion.[10]

Here, the injury to Plaintiff if the Court does not issue a temporary restraining order outweighs the harm caused to Smith. Smith's operation of Jayco after having solicited Plaintiff's

---

[8] *Hooters, Inc. v. City of Texarkana*, 897 F. Supp. 946, 949 (E.D. Tex. 1995).

[9] *Anadarko Petroleum Corp. v. Davis*, No. H-06-2849, 2006 WL 3837518, at *24 (S.D. Tex. Dec. 28, 2006).

[10] *Flywheel Fitness, LLC v. Flywheel Sports, Inc.*, No. 4:13-CV-48, 2013 WL 12138593, at *4 (E.D. Tex. 2013)

customers and potential customers and taken Plaintiff's proprietary information will result in Plaintiff's erosion of its goodwill, a loss that is difficult or impossible to quantify by monetary damages (Dkt. #1 at ¶ 5). The Court acknowledges that Plaintiff is a large recruiting company focusing on various industries (Dkt. #1 at ¶¶ 9, 24), while Jayco is a small company solely focused on the construction industry (Dkt. #1 at ¶ 100). The Court does not suggest Defendants will not be harmed by being temporarily restrained until the preliminary injunction hearing. Practically, Smith would be prohibited from operating her own company, Jayco, as a Competing Business of Plaintiff if the non-compete provision of the Agreement were upheld. However, the Court will not weigh the harm to Smith as greater than the harm to Plaintiff considering that Smith agreed to the non-compete in the Agreement upon her hiring, and in turn, Smith was granted access to Plaintiff's recruitment trade secrets and took this propriety information with her and launched Jayco in the same industry within a week of her resignation (Dkt. #1 at ¶¶ 4, 51, 80, 99).

The Court finds that despite the comparative sizes of the companies at issue and the fact that Jayco will be put temporarily out of business, the equities still favor granting the temporary restraining order.

### D.  Public Interest

"In exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter*, 555 U.S. at 24. This factor overlaps substantially with the balance-of-hardships requirement. *Id*. "The purpose of an injunction is to remove the advantage created by the misappropriation." *Halliburton Energy Servs., Inc. v. Axis Techs., LLC*, 444 S.W.3d 251, 263 (Tex. App.—Dallas 2014, no pet.) (citing *Bryan v. Kershaw*, 366 F.2d 497, 502 (5th Cir. 1966)). Indeed, "the undoubted tendency of the law has been to recognize and enforce higher standards of commercial morality in the business world." *Id*.

(quoting *Hyde Corp. v. Huffines*, 314 S.W.2d 763, 773 (1958)). Lastly, it is in the public interest to uphold contracts and to enforce a remedy that is provided for by Texas law. *AmeriSpec, Inc. v. Metro Inspection Servs., Inc.*, CIV.A. 3:01–CV–0946–D, 2001 WL 770999, at \*6 (N.D. Tex. July 3, 2001) (granting injunction based on non-competition agreement, finding that "[i]t is in the public interest [under Texas Law] to uphold contracts and to enforce a remedy to which the parties have expressly agreed").

Here, Smith continues to operate Jayco in breach of the non-compete provision in the Agreement (Dkt. #11 at p. 11). Granting the temporary restraining order would serve the public interest by depriving Smith of the benefit of her previous breach and enforcing the Agreement the parties entered. Defendants argue Plaintiff has previously violated the Fair Labor Standard Act ("FLSA") while Smith was employed by Plaintiff when it misclassified Smith as a salaried employee and then failed to pay her overtime (Dkt. #11 at p. 12). Defendants argue public interest and the balance of equities dictate that due to Plaintiff's prior violations of federal employment laws with respect to Smith, it should not be able to obtain injunctive relief against her and Jayco (Dkt. #11 at p. 12 (citing *Fromhold v. Insight Global, LLC*, 657 F.3d 880, 889 (N.D. Tex. 2023) (finding that an employer who engaged in religious discrimination should not get injunctive relief enforcing the employee's non-compete agreement because of violating Title VII))). The Court does not find Defendants' reliance on *Fromhold* persuasive, because the employee in that case resigned as a result of his former employer's decision to deny his religious exemption to its COVID-19 vaccine mandate, remove him from leadership positions, attempt to reduce his base salary, and violate Title VII's prohibition on religious discrimination. 657 F.3d at 889. That is not the case here.

---

Case 4:25-cv-01079-ALM   Document 16   Filed 10/28/25   Page 15 of 20 PageID #: 376

Even after considering Smith's Original Counterclaim (Dkt. #15), Smith does not allege the wrongful conduct caused her resignation.

Accordingly, the Court finds that the public interest favors a temporary restraining order to uphold the terms of the Agreement neither party denies they entered.

## II. Expedited Discovery

"[E]xpedited discovery sought for the purpose of a preliminary injunction is only discoverable if the request for injunctive relief is proper under the operative complaint." *Amos v. Taylor*, No. 4:20-CV-7-DMB-JMV, 2020 WL 5809972, at *3 (N.D. Miss. Aug. 26, 2020). Having established Plaintiff is entitled to a temporary restraining order, the Court will grant Plaintiff's accompanying Motion for Expedited Discovery (Dkt. #3).

## CONCLUSION

It is therefore **ORDERED** that Plaintiff's Application for Temporary Restraining Order and Preliminary Injunction (Dkt. #2), Plaintiff's Motion for Expedited Discovery (Dkt. #3), and Plaintiff's Request for Issuance of Temporary Restraining Order without Hearing, or in the Alternative, Request for Hearing (Dkt. #12) are hereby **GRANTED**.

It is further **ORDERED** Defendants are temporarily **RESTRAINED**, as follows:

a. Smith shall not, directly or indirectly, (i) perform a Competing Position for a Competing Business, including Jayco, within the Restricted Territory; (ii) own, maintain, operate or have any ownership interest in a Competing Business, including Jayco; or (iii) perform any other services for a Competing Business, including Jayco, that are likely or probable to result in the disclosure of Confidential Information;

b. Smith shall not, directly or indirectly, (i) solicit, seek to employ, or seek to retain the services of any employee or contractor of Plaintiff with whom Smith worked or learned Confidential Information about during the Look Back Period; or (ii) solicit or seek to place any temporary employee, candidate for employment, or contractor candidate, who, during the Look Back Period, Smith directly or indirectly placed or whom Smith worked with to be placed; or (iii) persuade, induce or attempt to

15

persuade or inducing any such person referenced in this subsection to leave their employment or temporary employment or modify their working relationship with Plaintiff;

c.  Smith shall not, directly or indirectly, (i) solicit or seek to provide services to any customer or, to the extent permitted by applicable law, potential customer of the Company with whom Smith had Material Contact (as defined in the Agreement) (collectively, "Covered Customers"), which solicitation is for or on behalf of any Competing Business, including Jayco; or (ii) persuade, induce or attempt to persuade or inducing any such customer or potential customer to alter, reduce, or terminate its relationship with the Plaintiff;

d.  Defendants shall not, directly or indirectly, use or disclose any of Plaintiff's Confidential Information or trade secrets; and

e.  Jayco shall not, directly or indirectly, interfere with or assist Smith in breaching the Agreement.

It is further **ORDERED**, within seven (7) days of the effective date of this Order, Smith shall:

a.  produce non-privileged documents responsive to the following requests for the period January 1, 2025, through the present:

   i.   All documents in Smith's possession, custody or control that belong to, originated at, or came from Plaintiff.

   ii.  All documents showing or referencing that any document or information belonging to Plaintiff was deleted by you from any of your personal electronic devices or accounts.

   iii. All documents concerning communications that were exchanged between Smith and any third party concerning or enclosing Plaintiff's Confidential Information.

   iv.  All documents related to the formation, ownership, or operation of Jayco.

   v.   All documents concerning any contact, attempted contact, or anticipated contact Smith has had or will have with Plaintiff's candidates, including but not limited to phone records, electronic mail, text messages, voice messages, any messages exchanged through social media (including LinkedIn), meeting invitations, and/or personal or work calendars.

vi.   All documents concerning any contact, attempted contact, or anticipated contact Smith has had or will or have with Plaintiff's customers or potential customers, including but not limited to phone records, electronic mail, text messages, voice messages, any messages exchanged through social media (including LinkedIn), meeting invitations, and/or personal or work calendars.

vii.  All documents referred to or relied upon in connection with the preparation of Smith's answers to Plaintiff's Expedited Set of Interrogatories

b.   provide written answers, sworn to and under oath, to the following interrogatories:

i.   Identify each customer or potential customer of Plaintiff who has been contacted by or on behalf of Jayco since January 1, 2025, including the date, approximate time, person who made contact by or on behalf of Jayco, mode of communication, and a description of the substance of the communication;

ii.  Identify each current or former candidate of Plaintiff who has been contacted by or on behalf of Jayco since January 1, 2025, including the date, approximate time, person who made contact by or on behalf of Jayco, mode of communication, and a description of the substance of the communication;

iii. Identify each customer or potential customer of Plaintiff who has contracted with Jayco, or is negotiating a contract with Jayco;

iv.  Identify each current or former candidate of Plaintiff who has been presented to any potential employer or placed with any potential employer by or on behalf of Jayco since January 1, 2025, including the date, approximate time, person who made contact by or on behalf of Jayco, mode of communication, and a description of the substance of the communication;

v.   Identify each customer of Jayco, and for each customer, identify the amount of revenue from that customer.

vi.  Identify each candidate presented to a customer or placed with a customer by Jayco, and for each candidate, identify how Jayco learned the identity of that candidate.

vii. Produce all documents referred to or relied upon in connection with the preparation of Jayco's answers to Plaintiff's Expedited Set of Interrogatories.

17

It is further **ORDERED**, within seven (7) days of the effective date of this Order, Jayco shall:

    a. Shall produce non-privileged documents responsive to the following requests for the period January 1, 2025, through the present:

        i. All documents in concerning any contact, attempted contact, or anticipated contact by or on behalf of Jayco with Plaintiff's candidates, including but not limited to phone records, electronic mail, text messages, voice messages, any messages exchanged through social media (including LinkedIn), meeting invitations, and/or personal or work calendars.

        ii. All documents concerning any contact, attempted contact, or anticipated contact by or on behalf of Jayco with Plaintiff's customers or potential customers, including but not limited to phone records, electronic mail, text messages, voice messages, any messages exchanged through social media (including LinkedIn), meeting invitations, and/or personal or work calendars.

        iii. All documents in Jayco's possession, custody or control that belong to, originated at, came from or relate to Plaintiff's business.

        iv. All documents showing or referencing that any Plaintiff's document or information was deleted by Jayco from any electronic devices or accounts.

        v. All documents related to the formation, ownership, or operation of Jayco.

        vi. All documents related to any job postings for any Plaintiff's customer or potential customer.

        vii. All agreements or contracts between Jayco and any Plaintiff's customer or potential customer.

    b. Shall provide written answers, sworn to and under oath, to the following interrogatories:

        i. Identify each customer or potential customer of Plaintiff who has been contacted by or on behalf of Jayco since January 1, 2025, including the date, approximate time, person who made contact by or on behalf of Jayco, mode of communication, and a description of the substance of the communication;

    ii.    Identify each current or former candidate of Plaintiff who has been contacted by or on behalf of Jayco since January 1, 2025, including the date, approximate time, person who made contact by or on behalf of Jayco, mode of communication, and a description of the substance of the communication;

    iii.    Identify each customer or potential customer of Plaintiff who has contracted with Jayco, or is negotiating a contract with Jayco;

    iv.    Identify each current or former candidate of Plaintiff who has been presented to any potential employer or placed with any potential employer by or on behalf of Jayco since January 1, 2025, including the date, approximate time, person who made contact by or on behalf of Jayco, mode of communication, and a description of the substance of the communication;

    v.    Identify each customer of Jayco, and for each customer, identify the amount of revenue from that customer.

    vi.    Identify each candidate presented to a customer or placed with a customer by Jayco, and for each candidate, identify how Jayco learned the identity of that candidate.

    vii.    Produce all documents referred to or relied upon in connection with the preparation of Jayco's answers to Plaintiff's Expedited Set of Interrogatories.

It is further **ORDERED** that at a mutually agreeable date and time, but by no later than three (3) days prior to the preliminary injunction hearing, Smith shall appear for depositions at the offices of Littler Mendelson, P.C., 2001 Ross Ave #1500, Dallas, TX 75201. This deposition shall not exceed 4 hours in length, and Plaintiff's right to re-depose Smith at a later time is expressly preserved.

It is further **ORDERED** that a hearing on Plaintiff's Application for Preliminary Injunction shall be set for Monday, November 10, 2025, at 4:00 p.m., at which time this Temporary Restraining Order shall expire.

It is further **ORDERED** that this Temporary Restraining Order shall not be effective unless and until Plaintiff files an appropriate bond in the amount of $2,000.00.

**IT IS SO ORDERED**.

**SIGNED this 28th day of October, 2025.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE